FRANCINE BLACK vs. SCHOOL COMMITTEE OF MALDEN
(and a companion case[1]).

Middlesex. October 10, 1975. — February 3, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*School and School Committee. Damages, Back pay, Mitigation of damages, Counsel fees.*

Where this court found that a school committee's dismissal of women teachers on account of their pregnacies violated the Fourteenth Amendment to the United States Constitution and remanded the cases to the Superior Court to consider the issue of damages, the parties· were not bound by prior stipulations and the Superior Court judge properly permitted the question of damages to be reopened in its entirety. [659-660]

In considering the plaintiffs' damages as a result of the illegal termination of their employment as school teachers, it was error for the Superior Court judge to exclude evidence of salary scales paid by adjoining cities which had available comparable jobs during the period in question, offered by the defendant to show mitigation of damages. [660-663]

Attorney's fees are an "expense" within the meaning of G. L. c. 71, § 43B, providing within certain limits for recovery of expenses incurred by a tenured teacher in defending himself against unwarranted removal. [663-664]

Two BILLS in equity filed in the Superior Court on September 30, 1970, and July 21, 1972, respectively. Following the decision of this court reported in 365 Mass. 197 (1974), the suits were reheard by *Mitchell,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

[1] Kathleen M. Lane vs. School Committee of Malden.

*Leo P. DeMarco,* City Solicitor, for the School Committee of Malden.

*Robert I. Deutsch (Paul H. Rothschild* with him) for Francine Black.

*Gerald B. Gallagher (Robert Smith* with him) for Kathleen M. Lane.

WILKINS, J.  When these cases were before us previously, we held that the school committee's discharges of the plaintiffs because of their pregnancies violated their constitutional rights.  *Black* v. *School Committee of Malden,* 365 Mass. 197 (1974).  We passed on various other questions, vacated the decrees, and remanded the cases to the Superior Court for further proceedings.  Those further proceedings, which were to deal with the question of the defendant's liability for back pay, have taken place, and we have before us principally the defendant's appeals from judgments awarding damages to the plaintiffs.  The plaintiff Black also appeals because the judge declined to award her counsel fees.  We conclude that the judge was in error in excluding relevant evidence which the defendant offered in an attempt to meet its burden of establishing that the plaintiffs reasonably could have reduced their losses by obtaining comparable employment.  We conclude also that the plaintiffs are entitled to counsel fees in these proceedings.

The factual circumstances lying behind the plaintiffs' claims are set forth in our prior opinion and need not be repeated fully here.  The plaintiffs taught through January 31, 1969, and were paid through March 10, 1969.  Mrs. Black's child was born on April 4; Mrs. Lane's on March 30.  They had filed complaints with the Massachusetts Commission Against Discrimination (MCAD) in December, 1968, and an MCAD investigating commissioner suggested terms of conciliation which, after some delay, were accepted by the school committee in July, 1969.  However, the plaintiffs, as was their right, declined to return to work in accordance with the MCAD's proposal.  After our earlier opinion was issued,

the plaintiffs were reinstated as teachers in the Malden school system.

In that earlier opinion, we discussed the burden of proof on the defendant to show mitigation of the damages otherwise payable to the plaintiffs. We said: "The defendants invoke the usual doctrine of mitigation applicable to discharges under contracts for personal service: if the discharged employee could by reasonable efforts have disposed of his time by finding comparable employment, and thus reduced his loss, he will to that extent be denied a monetary recovery." 365 Mass. at 211. We rejected an argument that a different rule applied to public school teachers, discussed the possibility (unclear on the record) that the plaintiffs might have been rehired in Malden if they had applied, and considered certain other factual circumstances which required further examination.

When the cases were presented for further consideration in the Superior Court, they were presented for decision on the prior record, which was an agreement as to all the material facts, and on additional evidence. The judge allowed the plaintiffs to offer further proof concerning their damages during the period considered at the first trial and concerning damages sustained to the date of the second trial. He allowed the defendant to attempt to prove mitigation as to all damages claimed by the plaintiffs.

We pause at this point to dispose of the parties' arguments concerning these actions of the judge. He did not abuse his discretion in permitting the question of damages to be reopened in its entirety. See *Butler* v. *Haley Greystone Corp.* 352 Mass. 252, 253 (1967). The plaintiffs were not bound conclusively by any prior stipulation concerning the facts because the cases were not tried this time on an agreement as to all the material facts. Nor did our prior opinion foreclose the judge from permitting the defendant to attempt to show that employment was available to the plaintiffs in school systems other than the

Malden school system, particularly where the judge permitted the plaintiffs a new, broad range in the proof of damages.

The judge found that the defendant would not have reinstated the plaintiffs under any conditions other than those proposed by the MCAD, and he ruled that the defendant had not "proven that the plaintiffs could, by reasonable efforts, have disposed of this time by finding comparable employment." He concluded that the sick leave to which the plaintiffs would have been entitled was sufficient to offset any time which the plaintiffs would have lost from teaching because of their pregnancies.[2] He ruled that Mrs. Black was entitled to $52,537.99 in unpaid salary, and that Mrs. Lane was entitled to $58,780. He declined to award attorney's fees under G. L. c. 71, § 43B, saying that any additional recovery for attorney's fees would be unconscionable. He did allow the plaintiffs' other expenses and costs of suit. As indicated above, Mrs. Black, but not Mrs. Lane, has appealed from the denial of counsel fees, and the defendant has appealed from the judgments for the plaintiffs.

The uncontroverted evidence with respect to any attempt by the plaintiffs to seek employment elsewhere and the availability of comparable employment can be summarized briefly. The parties stipulated that neither plaintiff had "sought employment as a school teacher elsewhere" since March, 1969. During 1969, 1970, and 1971, there were teaching openings for persons of their training in the adjoining cities of Everett, Medford, Melrose, and Revere.[3] The judge found that "teachers of

---

[2] Mrs. Lane had a second child in April, 1971, and a third in January, 1973. Mrs. Black had a second child in January, 1972. The judge's calculations assumed that each plaintiff would have worked right up to the day of birth of each child, a conclusion which is not supported by any evidence and seems contrary to common practice.

[3] The evidence of available, comparable jobs was presented through the superintendents of schools in these four cities. The superintend-

their discipline were hired in adjoining school districts." The plaintiffs lived in Everett and commuted to Malden to teach. One of them moved to Peabody after she was discharged by the defendant. In these circumstances, we think that comparable teaching jobs clearly were available in geographical areas in which the plaintiffs could not reasonably have refused to seek alternative employment.

The judge ruled that the defendant did not meet its burden of showing that the plaintiffs could have avoided all or any part of their damages resulting from their improper discharge. He must have regarded evidence of available, comparable employment in neighboring cities as immaterial because he excluded evidence of the salary scales paid in three of the adjoining cities during all or part of the period from September, 1969, to and including September, 1972.[4] This evidence was admissible as part of the "mitigation of damages" defense, and it was error to exclude it. Because there must be a new trial, we shall discuss certain principles which should guide the course of that proceeding.

A former employer meets its burden of proof of "mitigation of damages" if the former employer proves that (a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreason-

---

ent of schools in Everett testified that one mathematics teacher was hired in September, 1969; one in March, 1970; and three in 1971, two of whom had prior teaching experience. The superintendent of schools in Medford testified that four full time mathematics teachers were hired in 1969 and that six full time mathematics teachers were hired in 1970. The superintendent of schools in Melrose testified that two mathematics teachers were hired in the summer of 1969, three in 1970, and two in 1971, none of whom had prior experience. The superintendent of schools in Revere testified that two mathematics teachers without prior experience were hired both in 1969 and 1970 and that a woman with two years experience was hired in 1971.

[4] No evidence was offered as to the fourth city.

ably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs. See *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 7-8 (1908); 8 S. Williston, Contracts § 1358 (3d ed. 1968). In *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 677 (1964), we said that an improperly discharged employee "is entitled to recover his back salary less what he did in fact earn following his discharge or in the exercise of proper diligence *might* have earned in another employment" (emphasis supplied). To require that the former employer prove conclusively that the former employee would have obtained employment in a comparable job would impose an impossible burden on a former employer (see Annot., 44 A.L.R.3d 629, 639 [1972]) and, as a practical matter, virtually would abolish the established principle that a discharged employee must take the consequences of his or her failure to seek reasonably available comparable employment.

Because of the judge's view of the "mitigation defense," no finding was made below as to when the plaintiffs reasonably should have undertaken to seek alternate employment. We are certain that they should not be bound by their failure to seek other employment immediately on discharge. We think, however, that when they rejected the July 1, 1969, offer of the school committee to accept the compromise proposed by the MCAD, it then became reasonable to expect that they would seek alternate employment, and they should sustain any proven consequences of not doing so.[5] *Ransom* v. *Boston*, 196

---

[5] We note that most of the teachers hired by adjacent municipalities had no prior experience. The decisions of the school committees in those communities to hire such persons may have been prompted not by a lack of experienced teachers but by a desire to keep down expenses by hiring persons who could be paid at the bottom of the pay scale. Hence, it is not clear that the plaintiffs would have been hired at their previous salary grades. On the other hand, prior experience was a likely advantage in any effort, had one been made, to obtain employment.

Mass. 248, 253 (1907). We cannot tell on this record the earliest date thereafter that any comparable employment was available, and we leave to the further proceedings the question whether the plaintiffs had a reasonable prospect of being hired.

A remaining question is whether the plaintiffs will be entitled to recover any allowance toward attorney's fees, pursuant to G. L. c. 71, § 43B, as appearing in St. 1972, c. 464, § 6. Section 43B provides in part that "[a]ny teacher . . . employed at discretion [as the plaintiffs were] . . . who has incurred expense in defending himself against an unwarranted removal . . . shall be reimbursed for such expense from the same source from which his salary is paid; provided, however, that the amount of such reimbursement shall in no event exceed ten per cent of the amount of the usual compensation of such person for the period during which such removal . . . was in effect." We believe that expenses incurred in proceedings such as these are reimbursable under § 43B. Thus we must decide whether attorney's fees are an "expense" within the meaning of that word in § 43B. The purpose of any statute referring to "expenses" must be examined to determine whether counsel fees are to be paid. *Sears v. Nahant,* 215 Mass. 234 (1913).[6]

We believe that attorney's fees are a reimbursable expense to the limit set forth in § 43B. Section 43A, which immediately precedes § 43B, refers to the right of any dismissed teacher to appeal his dismissal to the Superior Court, a proceeding which normally would be expected to involve the expense of counsel. The limitation of recoverable expenses to ten per cent of the teacher's lost compensation suggests that counsel fees were

---

[6] In the absence of statutory authorization, generally a litigant must bear his own counsel fees. See *C.J. Hogan, Inc.* v. *Atlantic Corp.,* 332 Mass. 322, 327 (1955). See, however, *Commissioner of Ins.* v. *Massachusetts Accident Co.,* 318 Mass. 238, 241-243 (1945), for cases involving assets or funds from which discretionary payments of counsel fees are allowed.

intended to be an expense, because in many cases, probably in most cases, expenses would not approach the statutory limit if attorney's fees were not an "expense."[7]

The statutory limit on expenses to be allowed to the teacher is an expression of public policy that an allowance toward reasonable expenses up to that limit is proper, and a ruling that such an allowance for attorney's fees would be "unconscionable," as the judge stated, cannot stand.

In the further proceedings, proof of the reasonableness of attorney's fees may be made without producing actual records of time spent by counsel. Although accurate, contemporaneous records of the time spent on behalf of a client and of the nature of the work performed are of obvious value in proving what services were performed by an attorney, such records do not constitute the only possible method of proof. These facts may be established by the attorney's testimony. *Perkins* v. *Blake,* 3 Mass. App. Ct. 415, 419 (1975).

We believe the commencement of suit, a finding in favor of a plaintiff teacher, and the filing of a motion for allowance of expense under § 43B are sufficient to satisfy the requirement in § 43B that the teacher make "written application to the school committee for such reimbursement." When the trial of a case such as this is concluded, the statutory limit will be ascertainable, and the judge will be in an excellent position to determine the

---

[7] Neither party relies on the legislative history of § 43B. The crucial language — "incurred expense in defending himself against an unwarranted removal or suspension" — appears in St. 1961, c. 240, which inserted § 43B in G. L. c. 71. The final language of § 43B replaced (1961 Senate Journal 546) language in an earlier bill (1961 Senate Doc. No. 25) which had referred explicitly to counsel fees: "A school employee shall be reimbursed for expense incurred by him for reasonable counsel fees on account of defending himself against charges resulting in his suspension or removal . . . ." The elimination of the reference to counsel fees seems to point as much to an intention to cover all expenses as it does to an intention not to cover attorney's fees at all.

plaintiff's expenses and to make an allowance, if the defendant does not agree to the amount. If the statutory limit is not reached and the plaintiff subsequently incurs additional recoverable expense, a written application to the school committee for reimbursement, of course, will be necessary.

In each case, the orders for judgment for the plaintiffs and the judgments are reversed.

*So ordered.*